USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-7-16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ESTATE OF GHAIS ABDULJAAMI, by
Administrator of the Estate Saboor H. AbdulJaami,   :

Plaintiff,   :

: **OPINION AND ORDER**

- against -   :

: **14-CV-7902 (RLE)**

U.S. DEPARTMENT OF STATE,   :

Defendant.   :

**RONALD L. ELLIS, U.S.M.J.:**

## I.     INTRODUCTION

On September 30, 2014, Plaintiff Estate of Ghais AbdulJaami, by Administrator of the

Estate Saboor H. AbdulJaami ("AbdulJaami"), filed a Complaint against Defendant United

States Department of State (the "State Department" or the "Department"), alleging violations of

the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and seeking declaratory and

injunctive relief.  On December 12, 2014, the Parties consented to the jurisdiction of the

undersigned.  Before the Court is the State Department's motion for summary judgment (Doc.

No. 23) and Plaintiff AbdulJaami's cross-motion for summary judgment. (Doc. No. 27.)

The Department raises two issues: (1) that it met its obligation to conduct reasonable

searches for the documents sought by AbdulJaami because it released non-exempt records

responsive to the request; and (2) that it properly withheld documents or portions thereof

pursuant to FOIA Exemptions 1, 3, 5, 6, 7(C), and 7(E).  (Defendant's Memorandum of Law in

Support ("Def. Mem.") at 8.)  AbdulJaami argues[1] that the State Department conducted an

---

[1] AbdulJaami's arguments were originally grouped as six claims. However, the Court understands AbdulJaami's
motion to be raising three separate claims.

inadequate and unreasonable search by: (1) relying on inappropriate search methods; (2)

avoiding appropriate search terms and excluding certain search locations; and (3) acting in bad

faith in conducting the searches for documents responsive to the request. (*See* Declaration of

Saboor H. AbdulJaami in Opposition ("Pl. Decl.").)  For the reasons set forth below, the State

Department's motion is **GRANTED**, and AbdulJaami's motion is **DENIED.**

## II.       BACKGROUND

On April 16, 2013, AbdulJaami submitted a request for documents under FOIA to the

State Department.  In the request, AbdulJaami sought production of documents relating to the

September 18, 2012 death of Gha-is AbdulJaami in Köln (Cologne), Germany and "all

correspondence, memoranda or other records evidencing, reflecting, or relating to case files

involving terrorist groups, unsolved significant murders, or special events in or around Köln

(Cologne), Germany, for the period beginning six (6) months prior to September 18, 2012, and

extending six months after September 18, 2012."  (Decl. of John F. Hackett ("Hackett Decl.") at

¶ 4; Pl. Decl., Ex. 1.)  AbdulJaami specified eleven different locations in which he believed

responsive records were located.  (Pl. Decl., Ex. 1 at ¶¶ 1-11.)

The State Department's Office of Information Programs and Services ("IPS")

acknowledged receipt of the request by letter dated April 30, 2013.  (*See* Pl. Decl., Ex. 3.)  After

review, IPS determined that responsive documents were "reasonably likely" to be located in five

of the offices or records systems AbdulJaami specified: (1) the U.S. Consulate in Frankfurt,

Germany; (2) the U.S. Consulate in Dusseldorf, Germany; (3) the Bureau of Diplomatic

Security; (4) the Office of Overseas Citizens Services; and, (5) the Central Foreign Policy

Records ("Central File").  (Hackett Decl. at ¶ 13.)  IPS concluded that no other locations were

reasonably likely to maintain documents fitting AbdulJaami's request.  (*Id.*)  The request was

2

then transmitted to those five locations so that employees could commence searching for responsive documents. AbdulJaami inquired about the status of the request in emails to IPS dated June 4, 2013, and September 11, 2013. (*See* Hackett Decl., Ex. 3.) On September 18, 2013, IPS notified AbdulJaami that the estimated completion date for the request was May 2014. (*Id.*)

On September 30, 2014, AbdulJaami filed the present Complaint against the U.S. Department of State to compel compliance with FOIA. He alleged that the State Department failed to produce any records responsive to his request, and failed to demonstrate that responsive records were exempt from production. (Pl. Decl., Ex. 4.) No records were provided to AbdulJaami until after suit was filed with this Court. (Pl. Decl. at ¶ 5.) On October 2, 2014, before the State Department filed a response, IPS notified AbdulJaami that it had initiated searches for documents responsive to his request, and that some, but not all, of those searches had been completed. (Hackett Decl. at ¶ 7 and Ex. 4.) IPS released twenty-three documents in full and four documents in part, and withheld one document in full. (*Id.*)

IPS continued to release documents as they were recovered, with the final release of documents occurring on April 6, 2015. (Hackett Decl. at ¶ 4 and Ex. 9.) In all, the State Department located forty-nine documents responsive to the request, thirty-three of which were released in full. (Hackett Decl. at ¶ 67.) Of the remaining sixteen documents, the State Department released nine, in part, and withheld two, in full, pursuant to FOIA Exemptions 1, 5, 6, 7(C), and 7(E). (*Id.* at ¶¶ 54-66; *See* 5 U.S.C. § 552(b).) The Department also referred documents to the U.S. Army Europe ("USAREUR"). (Decl. of Col. Laura A. Potter ("Potter Decl.") at ¶ 6.) USAREUR withheld five documents in full pursuant to FOIA Exemptions 1 and 3. (*Id.*)

3

## III.   DISCUSSION

### A. Summary Judgment Standard and FOIA

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice,* 697 F.3d 184, 193 (2d Cir. 2012) (*citing* Fed. R. Civ. P. 56(a)). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The role of the court on a motion for summary judgment "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Knight v. United States Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Summary judgment is "the preferred procedural vehicle for resolving FOIA disputes." *Bloomberg L.P. v. Bd. Of Governors of Fed. Reserve System,* 649 F. Supp. 2d 262, 270 (S.D.N.Y. 2009). "When responding to a FOIA request, a federal agency must: (1) conduct an adequate search using reasonable efforts, (2) provide the information requested, unless it falls within a FOIA Exemption, and (3) provide any information that can reasonably be segregated from the exempt information." *Id.* at 271; *see also* 5 U.S.C. §§ 552(a)(3), 552(b). FOIA is designed to "promote honest and open government, and to assure the existence of an informed citizenry in order to hold the governors accountable to the governed." *Brennan Ctr.,* 697 F.3d at

4

193.  FOIA's "strong presumption of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

Motions for summary judgment in the FOIA context are unique in that the government's affidavits are accorded a presumption of good faith. *Id.*  "[S]o long as such affidavits supply facts indicating that the agency has conduct[ed] a thorough search and give[s] reasonably detailed explanations why any withheld documents fall within an exemption," the burden of proof will be satisfied and summary judgment is appropriate without discovery. *Id.*; *accord Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).  An agency's determination that documents are enumerated under an exemption, however, is afforded no deference. *Bloomberg L.P*, 601 F.3d at 147.

To carry their burden, agencies generally submit a *Vaughn* index, which is an "itemized listing of the non-disclosed records, describing each record and portion withheld, and providing a detailed justification for the agency's withholding, specifying the [applicable] FOIA exemption." *Nat'l Day Laborer Org. Network v. United States Immigr. Customs Enf't Agency*, 811 F. Supp. 2d 713, 733 (S.D.N.Y. 2011).  A *Vaughn* index allows the opposing party "to contest the affidavit in an adversarial fashion," and permits a court to effectively review the agency's redactions. *Halpern v. F.B.I.*, 181 F.3d 279, 293 (2d Cir. 1999). While courts recognize that "[d]iscovery is not favored in lawsuits under FOIA," *Beltranena v. Clinton*, 770 F. Supp. 175, 187 (D.D.C. 2011), "[p]laintiffs may obtain discovery if they can show bad faith on the part of the agency sufficient to impugn the agency's affidavits . . . or provide some tangible evidence . . . that summary judgment [on behalf of the defendant] is otherwise inappropriate." *Carney*, 19 F.3d at 812.

5

## B. The State Department's Search Efforts

To defend search efforts made in response to a FOIA request, the State Department need only show that "its search was adequate." *Long v. Office of Personal Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012). "Adequacy" requires the Government to demonstrate that its search was "reasonably calculated to discover the requested documents." *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). This standard does not stipulate perfection; an agency "is not expected to take extraordinary measures to find requested records." *Garcia v. U.S. Dep't of Justice Office of Info. & Privacy,* 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002). An agency is only required to conduct a search "reasonably designed to identify and locate responsive documents," and thus failure to return all responsive documents is not necessarily inconsistent with reasonableness. *Lawyers Comm. for Human Rights v. I.N.S.,* 721 F. Supp. 552, 566 (S.D.N.Y.1989); *accord Marrera v. U.S. Dep't of Justice,* 622 F. Supp. 51, 54 (D.D.C.1985) (agency not required to search every division or field office to fulfill the adequate search requirement).

Reasonableness may be established "solely on the basis of the Government's relatively detailed, non-conclusory affidavits that are submitted in good faith." *See Carney*, 19 F.3d at 812. Where an agency's declarations indicate a reasonable search, "the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations" in order to overcome summary judgment and proceed with discovery. *Id.*

In this case, the State Department submitted a declaration explaining the searches it had conducted in response to AbdulJaami's request, and the bases for its withholding of information pursuant to Exemptions 1, 5, 6, 7(C) and 7(E). (*See* Hackett Decl.) Moreover, USAREUR submitted a separate declaration explaining the bases for withholding in full, pursuant to

6

Exemptions 1 and 3, the five documents responsive to the request that were referred by the State Department to USAREUR. (*See* Potter Decl.)

The State Department's affidavits show that its searches were adequate. In accordance with established procedures, the State Department assigned AbdulJaami's FOIA request to IPS, which evaluated the request to determine which offices, overseas posts, or records systems might contain responsive records. (Hackett Decl. at ¶ 11.) When assessing which locations and records systems within the State Department are reasonably likely to contain the information requested, IPS relies on the knowledge and expertise of the employees of each search location, as they are in the best position to know how their files are organized. (*Id.* at ¶ 14.) "Likewise, [the] employees are also in the best position to determine which search terms would yield potentially responsive records from electronic systems." (*Id.*) The Department's efforts to ascertain which records systems were likely to house materials responsive to AbdulJaami's request led to searches at two U.S. Consulates, and within the Bureau of Diplomatic Security, the Office of Overseas Citizens Services, and the Central Foreign Policy Records. (*Id.* at ¶ 13.)

At the U.S. Consulate in Frankfurt, consular staff conducted a search of the American Citizens Services paper and electronic records using the search terms "Abdul-jaami," and "Abdul-jaami, Gha-is," as well as the social security number provided in the request. (*Id.* at ¶ 18.) The paper and electronic files of the Frankfurt Regional Security Office ("RSO") also were searched for documents related to the request, using the terms "Gha," "Abdul," "Abduljaami," "Saboor," "Koln," "Koeln," and "Cologne." (*Id.* at ¶ 20.) After locating twenty-eight responsive documents as a result of these searches, the U.S. Consulate in Frankfurt forwarded them to the Department, which released twenty-three documents in full and five in part. (Hackett Decl. at ¶ 21.) At the U.S. Consulate in Dusseldorf, the RSO conducted a search of its electronic files

using the search terms "Abduljaami," "Jammi," "Abuljammi," "Ghais," and "Gha."  (*Id*. at ¶ 16.) Consular staff also performed a manual search within the RSO's paper records, in the subject case files labeled "Polizei Koln" (Cologne Police), "Polizei NRW" (Police of North Rhine-Westphalia), and "RSO Dusseldorf."  (*Id.*)  The searches of the U.S. Consulate in Dusseldorf failed to locate any responsive records.  (*Id*. at ¶ 17.)

The Bureau of Diplomatic Security's Freedom of Information and Privacy Act Office, which assesses "incoming FOIA requests, determines which components of the Bureau of Diplomatic Security ("DS") are reasonably likely to have responsive records, and then tasks those components with performing searches," reviewed AbdulJaami's request and conducted searches of the only four DS components determined reasonably likely to maintain responsive records.  (*Id*. at ¶ 22.)  A total of seventy relevant search terms were used between the four DS locations searched, including: "Gha-is AbdulJaami," "Gha Abdul-Jaami," "Ghais Abdul-Jaami," "Ghais Abul Jammi," "Gha-is Abdul-Jaami," "Murder Cologne," "terrorism Cologne," "Kill Cologne," and "Death Cologne," in addition to the passport number included in the subject FOIA request.  (*Id*. at ¶¶ 22-26; Pl. Decl., Ex. 1.)  Two documents pertaining to the request were located as a result of these searches.  (Pl. Decl. at ¶ 27.)  The Department released both documents with excisions.  (*Id.*)

The Office of Overseas Citizens Services ("OCS") in the Bureau of Consular Affairs reviewed AbdulJaami's request and determined that the only OCS component reasonably likely to maintain responsive records was American Citizens Services ("ACS"), which assists "consular officers overseas in the provision of services to U.S. citizens."  (Hackett Decl. at ¶ 28.)  ACS searched its shared drive and the personal email files of the country officer for Germany, including archived emails, using the following search terms: "Death of Gha-is Abduljaami,"

8

"Abduljaami," "Abduljammi," and "Abuljaami." (*Id.* at ¶ 29.) ACS also searched its limited paper files for any documents responsive to the request. (*Id.*) OCS located ten responsive records as a result of the searches, nine of which the Department released in full. (*Id.* at ¶ 30.) The Department released the one remaining document with excisions. (*Id.*)

The Central Foreign Policy Records is the centralized records system of the Department, containing over thirty million records, including: "diplomatic notes; correspondence to and from the White House, members of Congress, and other federal agencies; position papers and reports; memoranda of conversations; and interoffice memoranda." (*Id.* at ¶ 31.) Two separate full-text searches of the Central File were conducted, the first using the search terms "gha-is," "abduljaami," "abduljaami," "abduljammi," and "abuljaami," and the second, the following combination of terms: "cologne" or "koln," and "murder" or "killing" or "terrorist" or "terrorism," and "special events." (Hackett Decl. at ¶ 32.) These searches located nine responsive records. (*Id.*) The Department released one document in full, one in part, and withheld two in full; the remaining five documents were referred to USAREUR. (*Id.*)

Located in Wiesbaden, Germany, the USAREUR Intelligence Specialty General Staff Section (G2) is primarily responsible for "reviewing requests and making initial determinations as to classification status and releasability [sic] of national security information." (Potter Decl. at ¶ 2.) After careful review, USAREUR G2 determined that the five documents uncovered by OCS in the Central File contain classified information that is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(1). (*Id.* at ¶ 6.) In addition, it determined that the portions of the five documents that do not contain classified information are exempt from disclosure pursuant to 5 U.S.C. § 552(b)(3). (*Id.*)

### 1. The State Department's Search Methods Were Adequate

When responding to a FOIA request, "an agency's search obligations are dictated by whether the scope of the search is 'reasonably calculated to uncover all relevant documents.'" *Mobley v. C.I.A.,* 924 F. Supp. 2d 24, 44 (D.D.C. 2013) (quoting *Morley v. C.I.A.,* 508 F.3d 1108, 1114 (D.C. Cir. 2007)).[2] Even if a plaintiff specifies certain locations to be searched, "[a]n agency's search obligations are not dictated by a requester's demands to search particular components or databases." *Mobley,* 924 F. Supp. 2d at 44. "Thus, even when a requester specifically asks an agency to search a particular database, the agency has no obligation to do so unless that database is 'likely to contain responsive materials.'" *Id.* (quoting *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990)).

AbdulJaami attempts to cast doubt on the adequacy of the Department's search for records responsive to the request by alleging that IPS failed to search certain locations or databases referenced in the request itself. (Pl. Decl. at 5-8.) As explained above, the Department made informed decisions about which records systems were likely to contain materials responsive to the request, and concluded that "no other offices or records systems were reasonably likely to maintain documents responsive to Plaintiff's request." (Hackett Decl. at ¶ 13.) Even if other locations existed, "[t]here is no requirement that an agency search every record system" in which responsive documents might conceivably be found. *Oglesby,* 920 F.2d at 68.

---

[2] Courts in the Second Circuit frequently cite FOIA decisions from the D.C. Circuit as it is a "jurisdiction with considerable experience on FOIA matters." *Main St. Legal Servs., Inc. v. Nat'l Sec. Council,* 962 F. Supp. 2d 472, 474 (E.D.N.Y. 2013). *See also* Roman v. Nat'l Sec. Agency, No. 07–CV–4502, 2009 WL 303686, at *5 n. 3 (E.D.N.Y. Feb. 9, 2009) ("[T]he Second Circuit has evidenced a willingness to look to the law of other circuits— particularly the D.C. Circuit—in the area of FOIA . . .") (internal quotations omitted); *Inner City Press/Cmty. on the Move v. Bd. of *475 Governors of Fed. Reserve Sys.,* 463 F.3d 239, 244–45 (2d Cir. 2006) (adopting D.C. Circuit precedent in a FOIA context).

"An agency is not required to search for all possible variants of a particular name or term." *Conti v. U.S. Dep't of Homeland Sec.,* No. 12 Civ. 5827 (AT), 2014 WL 1274517, at \*15 (S.D.N.Y. Mar. 24, 2014) (citing *Vest v. Dep't of Air Force,* 793 F. Supp. 2d 103, 119 (D.D.C. 2011)) ("agency's search was adequate even when it failed to search 'under logical variants' of the names plaintiff provided"); *see also Physicians for Human Rights v. U.S. Dep't of Def.,* 675 F. Supp. 2d 149, 163 (D.C. Cir. 2009) ("there is no bright-line rule requiring agencies to use the search terms proposed in a FOIA request").

AbdulJaami further challenges the adequacy of the Department's records search on the ground that IPS did not search for the word "suicide," and did not search every location for every variation of Gha-is AbdulJaami's name that was referenced in the request, where the request listed four possible alternate spellings of AbdulJaami and two possible alternate spellings of Gha-is. (Pl. Decl. at 6 and ¶ 25.) The State Department's decision not to perform searches using the term "suicide" does not render its searches inadequate. As AbdulJaami acknowledges, an agency "is not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dep't of Justice,* 73 F.3d 386, 389 (D.C. Cir. 1996). The term "suicide" does not appear anywhere in the request. (Pl. Decl., Ex. 1.) Similarly, AbdulJaami's argument that the Department failed to search for all variants of the name provided in the request is not persuasive. (Pl Decl. at ¶ 25.) The Department was not required to search for all possible variations of any particular name or term in conducting its search. The State Department conducted its search using terms reasonably likely to identify documents responsive to the request, and in fact such records were located and provided to AbdulJaami.

## 2.  The State Department Acted in Good Faith

An agency's supporting declarations are "accorded a presumption of good faith," *Carney,* 19 F.3d at 812, and in order to rebut this presumption, a FOIA plaintiff must show bad faith on the part of the agency, a showing that "must be grounded in evidence." *Wilner v. Nat'l Sec. Agency,* 592 F.3d 60, 75 (2d Cir. 2009).  Therefore, to meet his burden, AbdulJaami must offer more than "bare allegations." *Carney,* 19 F.3d at 813.  "[P]urely speculative claims of bad faith will not suffice." *Ctr. For Constitutional Rights v. Dep't of Def.,* 968 F. Supp. 2d 623, 632 (S.D.N.Y. 2013), *aff'd sub nom Ctr. For Constitutional Rights v. C.I.A.,* 765 F.3d 161 (2d Cir. 2014), *cert. denied,* 201 WL 998615 (U.S. Mar. 9, 2015).

AbdulJaami argues that the State Department's purported failure to provide a copy of the German death certificate of Gha-is AbdulJaami destroys the presumption of good faith normally accorded to the Government's declarations.  (Pl. Decl. at 8-10.)  AbdulJaami had requested "the local death certificate, German Death Confirmation no. 7615/12 SE issued September 25, 2012 at Koln" (Pl. Decl. at ¶ 11.))  A document meeting that description was released as a part of the State Department's initial response to the request on October 2, 2014.  (Decl. of Andrew E. Krause ("Krause Decl."), Ex. 1; Hackett Decl. at ¶ 7 and Ex. 4.)  This German-language document bears a record number of "7615/12 SE" in the upper right-hand corner, refers to Gha-is Abdul-Jaami and notes a location and date of "Koln" and "25.09.2012" immediately above the signature line.  (Krause Decl., Ex. 1.)  Therefore, AbdulJaami's allegations of bad faith predicated on the supposed failure to locate or release this document are insufficient to impugn the good faith presumption accorded the State Department's declarations. *Carney,* 19 F.3d at 813.

AbdulJaami's various arguments do not provide a basis for rejecting the Department's account of the search procedure or demonstrate that the agency acted in bad faith. *Vest*, 793 F. Supp. 2d at 120. The Department evaluated the request and searched the record systems where it believed responsive documents were reasonably likely to be located. *See Amnesty Int'l USA v. C.I.A.*, 728 F. Supp. 2d 479, 497 (S.D.N.Y. 2010). Employees knowledgeable about those systems and the subject request conducted each search of the locations and records systems. (Hackett Decl. at ¶¶ 14, 16, 18, 23-26, 29, 32.) Moreover, exhaustive searches of electronic records and paper files were conducted using terms drawn from the Request itself. (*Id.* at ¶¶ 16, 18, 20, 23-26, 29, 32.) Furthermore, when the Department became aware of insufficiencies in its prior productions, it notified AbdulJaami and released previously withheld records. (Pl. Decl., Ex. 14.) Notably, the applicable legal standard "does not demand perfection." *Adamowicz v. I.R.S.*, 672 F. Supp. 2d 454, 462 (S.D.N.Y. 2009), *aff'd*, 402 F. App'x. 648 (2d Cir. 2010). Rather, an agency is required only to conduct a search "reasonably designed to identify and locate responsive documents." *Lawyers Comm.*, 721 F. Supp. at 566. For the foregoing reasons, the Court concludes that the searches performed by the Department were adequate.

### C. The State Department and USAREUR Properly Withheld Records or Information Pursuant to Applicable FOIA Exemptions

When enacting FOIA, Congress recognized that the "efficiency of Government would be hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.'" *Env't Prot. Agency v. Mink,* 410 U.S. 73, 87 (1973) (quoting S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)). In addressing requests for release of classified documents relating to national security matters, courts have repeatedly recognized "the uniquely executive purview of national security" and "the relative competencies of the executive and judiciary." *Wilner v. Nat'l Sec. Agency,* 592 F.3d 60, 76 (2d Cir. 2009) (citing *Larson v. U.S.*

*Dep't of State,* 565 F.3d 857, 865 (D.C. Cir. 2009)). Therefore, courts have routinely held that "a requester's opinion as to the risk created by disclosure is not sufficient to preclude summary judgment for the agency, when the agency possessing the relevant expertise has provided sufficiently detailed affidavits." *Allnet Commc'n Servs., Inc., v. F.C.C.*, 800 F. Supp. 984, 989 (D.D.C. 1992) (quoting *Struth v. F.B.I.*, 673 F. Supp. 949, 954 (E.D. Wis. 1987)).

The Department and USAREUR provided AbdulJaami with detailed indices of withheld documents as required by *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973). The *Vaughn* indices as well as the supporting declarations of John F. Hackett, Acting Director of IPS, and Colonel Laura A. Potter, Deputy Chief of Staff for Intelligence for U.S. Army Europe, provide the date range of the documents withheld, the number of pages, and the reason for their being withheld. *Brennan Ctr.,* 697 F.3d at 189.

AbdulJaami points out one reference to the State Department's withholding of entries pursuant to any FOIA exemption. (Pl. Decl. at 15.) He states that "the adequacy of Defendant's search, rather than withholdings under claimed exemptions, has been the focus," and proceeds to describe the withholdings from one document as an alleged example of "vagueness and ambiguity" in the Hackett Declaration. (*Id.*) According to AbdulJaami, "there is not enough detail provided" in the Department's affidavit "to determine whether the b (6) [sic] exemption, or any exemption, applies" to the information withheld. (*Id.*) However, the Hackett Declaration describes in reasonably specific detail the information and justification for nondisclosure, and demonstrates that the information withheld logically falls within the claimed 5 U.S.C. § 552(b)(6) exemption.

AbdulJaami takes issue with the fact that the State Department originally withheld one entry in full, but then released much of that document after further review. (Pl. Decl. at ¶¶ 21-

23; Hackett Decl. at ¶ 10.)  Nevertheless, AbdulJaami does not object to the now limited redactions in this document.  Wholly absent from AbdulJaami's opposition to the Department's pending motion is any discussion of the State Department's argument that it properly withheld information under the claimed exemptions.  AbdulJaami fails to provide any legally cognizable basis to impugn the good faith presumption accorded agency declarations and affidavits.

Ordinarily, a plaintiff—even one appearing *pro se*—will be found to have conceded the Government's factual assertions if he fails to contest them, once it is clear that he understood his responsibility to do so.  *See Augustus v. McHugh*, 870 F. Supp. 2d 167, 171-73 (D.D.C. 2012) (granting defendant's motion for summary judgment as conceded where plaintiff failed to challenge agency's justifications for withholding certain information); *Skybridge Spectrum Found. v. F.C.C.*, 842 F. Supp. 2d 65, 77-79 (D.D.C. 2012) (granting FCC's motion for summary judgment on basis that plaintiff conceded merits of FCC's withholding decisions, but additionally finding that agency's affidavits were sufficient to support its motion for summary judgment); *Bellegarde Dussuau v. Blockbuster, Inc.,* 03 Civ. 6614, 2006 WL 456374 at *7 (S.D.N.Y. Feb. 28, 2006) ("[b]ecause Plaintiff did not oppose Defendant's motion for summary judgment on this claim, summary judgment on the claim is granted."); *Douglas v. Victor Capital Group,* 21 F. Supp. 2d 379, 393 (S.D.N.Y.1998) (deeming plaintiff's claims to be abandoned after plaintiff failed to oppose a summary judgment motion specifically addressing those claims). However, the Court will discuss briefly the applicability of Exemption 6 to the Department's redactions from the two-page email chain at issue.

## 1.  Exemption 6

Exemption 6 protects from disclosure information from personnel, medical, or other similar files, "the disclosure of which would constitute a clearly unwarranted invasion of

personal privacy." 5 U.S.C. § 552(b)(6).  The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982).  The statutory language concerning files "similar" to personnel or medical files has been read broadly by the Supreme Court to encompass any "information which applies to a particular individual . . . sought from Government records."  *Id.* at 602.

Once it has been established that information falls within the protected class of Exemption 6, the focus of the inquiry turns to whether disclosure of the records at issue "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In determining whether personal information is exempt from disclosure, the Court must balance the public's need for this information against the individual's privacy interest.  *See Wood v. F.B.I.,* 432 F. 3d 78, 86 (2d Cir. 2005).  "The privacy side of the balancing test is broad and encompasses all interests involving the individual's control of information concerning his or her person."  *Id.* at 88.  The Supreme Court has limited the concept of public interest under FOIA to the "core purpose" for which Congress enacted it: To "shed[] light on an agency's performance of its statutory duties."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).  Information that does not directly reveal the operations or activities of the federal government, the Court repeatedly has stressed, "falls outside the ambit of the public interest that the FOIA was enacted to serve."  *Id.* at 775.

If no privacy interest is found, further analysis is unnecessary and the information must be disclosed.  *See Multi Ag Media LLC v. U.S. Dep't of Agric.*, 515 F. 3d 1224, 1229 (D.C. Cir. 2008) (stating that "[i]f no significant privacy interest is implicated . . . FOIA demands disclosure" (citing *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F. 2d 873, 874 (D.C.

Cir. 1989))). On the other hand, if a privacy interest is found to exist, the public interest in disclosure, if any, must be weighed against the privacy interest in nondisclosure. *See Associated Press v. U.S. Dep't of Def.*, 554 F. 3d 274, 291 (2d Cir. 2009) ("'Only where a privacy interest is implicated does the public interest for which the information will serve become relevant and require a balancing of the competing interests.'" (quoting *Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F. 2d 503, 509 (2d Cir. 1992))). If no public interest exists, the information should be protected; "something, even a modest privacy interest, outweighs nothing every time." *Horner*, 879 F. 2d at 879; *see also Seized Prop. Recovery Corp. v. U.S. Customs and Border Prot.*, 502 F. Supp. 2d 50, 56 (D.D.C. 2007) ("If no public interest is found, then withholding the information is proper, even if the privacy interest is modest.")

Here, the State Department withheld a portion of a two-page email chain pursuant to Exemption 6. (*See* Hackett Decl. at ¶¶ 54-58, 64.) "The information withheld included the name, personal telephone number, familial relationship, and the information provided to the Department regarding the disposition of the personal effects of the deceased." (Hackett Decl. at ¶ 55.) Having reviewed the State Department's affidavits, this withholding is characteristic of personal information routinely withheld under Exemption 6. The release of this information without authorization by the individuals identified could subject the individuals to unwanted public attention, and there is no public interest in the disclosure of the names or other identifying information regarding these individuals. (*See* Hackett Decl. at ¶¶ 46, 54-58.) This information "falls outside the ambit of the public interest that the FOIA was enacted to serve" because it does not directly reveal the operations or activities of the State Department. *Reporters Comm.*, 489 U.S. at 775. Therefore, the Court concludes that the State Department properly withheld certain

information pursuant to Exemption 6 to the Freedom of Information Act, 5 U.S.C. § 552(b)(6), in responding to the request.

With regard to any additional records or information withheld by the Department and USAREUR pursuant to 5 U.S.C. § 552(b), AbdulJaami's opposition to the pending summary judgment motion does not discuss or dispute that those entries are being properly withheld, and the Court agrees.

### D. Any Reasonably Segregable Portions of the Responsive Records Have Been Produced

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(9); *see also Schiller v. N.L.R.B.*, 964 F.2d 1205, 1209-10 (D.C. Cir. 1992) (noting that agency's affidavit referred to withholding of "documents, not information," and remanding for specific finding as to segregability). If, however, an agency determines that nonexempt material is so "inextricably intertwined" that disclosure would "leave only essentially meaningless words and phrases," then the entire record may be withheld. *Neufeld v. I.R.S.*, 646 F.2d 661, 663 (D.C. Cir. 1981); *see, e.g., Local 3, Int'l Bhd. Of Elec. Workers v. N.L.R.B.*, 845 F.2d 1177, 1179 (2d Cir. 1988); *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

The State Department and USAREUR reviewed the withheld material and disclosed all non-exempt information that reasonably could be segregated and disclosed. (Hackett Decl. at ¶ 67; Potter Decl. at ¶ 31.) Accordingly, all "reasonably segregable portion[s]" of the responsive records have been provided to AbdulJaami. 5 U.S.C. § 552(b)(9).

18

### IV.      CONCLUSION

For the foregoing reasons, the State Department's motion for summary judgment is

**GRANTED** and AbdulJaami's cross-motion is **DENIED.**  This motion having been resolved

(Doc. No. 23), the Complaint in this action is **DISMISSED** and the Clerk of the Court is directed

to close the case.


**SO ORDERED this** ___7th___ **day of January 2016.**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

19